## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RUSSELL HUGHES, individually on behalf
of himself and all others similarly situated,

                       **Plaintiff,**

   v.

WELEDA, INC.

                       **Defendant.**

Case No. 7:17-cv-2494 (CS)(JCM)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WELEDA, INC.'S MOTION TO DISMISS PLAINTIFF RUSSELL HUGHES'S COMPLAINT

---

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendant Weleda, Inc.*
21 Main Street, Suite 251
Hackensack, New Jersey 07601
Tel:   201-708-8207
Fax:   201-488-6652
cnucifora@kdvlaw.com
esardina@kdvlaw.com

Of Counsel:
    Christopher Nucifora, Esq.

On the Brief:
    Christopher Nucifora, Esq.
    Erik E. Sardiña, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT. ........................................................................................1

FACTS AND PROCEDURAL HISTORY .........................................................................2

LEGAL ARGUMENT.........................................................................................................5

    POINT I: LEGAL STANDARD ...............................................................................5

    POINT II: PLAINTIFF LACKS CLASS STANDING TO ASSERT CLASS CLAIMS
    FOR PRODUCTS HE DID NOT PURCHASE ........................................................6

    POINT III: PLAINTIFF'S RELIANACE ON THE OFPA IS MISPLACED .............8

    POINT IV: THE INGREDIENTS ARE NON-SYNTHETIC UNDER THE OFPA
    REGULATIONS ........................................................................................................9

    POINT V: PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY
    FAILS .......................................................................................................................20

    POINT VI: PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE MAGNUSON-
    MOSS WARRANTY ACT ......................................................................................20

    POINT VII: PLAINTIFF'S CLAIMS OF BREACH OF IMPLIED WARRANTY OF
    MERCHANTABLITY AND WARRANTY OF FITNESS FOR PARTICULAR
    PURPOSE SHOULD BE DISMISSED ...................................................................22

    POINT VIII: PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR
    INJUNCTIVE RELIEF ...........................................................................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

CASES

*Abraham v. Volkswagen of Am., Inc.,*
795 F.2d 238 (2d Cir. 1986) ...................................................................22, 23

*Ackerman v. Coca-Cola Co.,*
CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. Jul. 21, 2010)............................ 23-24

*Albert v. Blue Diamond Growers,*
151 F. Supp. 3d 412 (S.D.N.Y. 2015) ...................................................................25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................5

*Atik v. Welch Foods, Inc.,*
15-CV-5405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016) ............................25

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................*passim*

*Biro v. Conde Nast,*
963 F. Supp. 2d 255 (S.D.N.Y. 2013) ...................................................................13

*Bowling v. Johnson & Johnson,*
65 F. Supp. 3d 371 (S.D.N.Y. 2014) ...................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C,*
433 F.3d 181 (2d Cir. 2005) ...................................................................6

*Chiarelli v. Nissan N. America, Inc.,*
14-CV-4327, 2015 U.S. Dist. LEXIS 129416 (E.D.N.Y. Sept. 25, 2015) ........................ 21-22

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)...................................................................24

*DiMuro v. Clinique Labs., LLC,*
572 Fed. Appx. 27 (2d Cir. 2014)...................................................................6,7

*Doron Precision Sys., Inc. v. FAAC, Inc.,*
423 F. Supp. 2d 173 (S.D.N.Y. 2006) ...................................................................13

*Ebin v. Kangadis Food Inc,*
13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 19, 2013) ........................20, 23

*Hairston v. South Beach Bev. Co,*
  CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) ........................21

*In re Frito-Lay N. Am., Inc., All Nat. Litig.,*
  12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ...........................21

*Kelly v. Cape Cod Potato Chip Co.,*
  81 F. Supp. 3d 754 (W.D. Mo. 2015) .......................................................................................9

*Koenig v. Boulder Brands, Inc,*
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) .....................................................................................20

*Levy v. Southbrook Int'l Invs., Ltd.,*
  263 F.3d 10 (2d Cir. 2001) ........................................................................................................7

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) ................................................................................................. 5-6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  693 F.3d 145 (2d Cir. 2012) ......................................................................................................6

*Nicosia v. Amazon.com, Inc.,*
  834 F.3d 220 (2d Cir. 2016) ...............................................................................................24, 25

*Pai v. Springs Indus., Inc.,*
  795 N.Y.S.2d 98 (2d Dep't 2005)............................................................................................24

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chi. v. Bank of N.Y. Mellon,*
  775 F.3d 154 (2d Cir. 2014) ......................................................................................................7

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000) ......................................................................................................13

*Tomasino v. Estee Lauder Companies, Inc.,*
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ......................................................................................25

*Viggiano v. Hansen Natural Corp.,*
  944 F. Supp. 2d 877 (C.D. Ca. 2013) ......................................................................................23

*Viscusi v. Proctor & Gamble,*
  05-CV-01528, 2007 U.S. Dist. LEXIS 51307 (E.D.N.Y. July 16, 2007),
  *aff'd sub nom., Viscusi v. P & G-Clairol, Inc.,* 346 Fed. App. 715 (2d Cir. 2009).................24

*Weisblum v. Prophase Labs., Inc.,*
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................................. 22-23

*Westchester Cnty. v. Gen. Motors Corp.*,
  555 F. Supp. 290 (S.D.N.Y. 1983 ........................................................................23

*Wick v. Wabash Holding Corp.*,
  801 F. Supp. 2d 93 (W.D.N.Y. 2011) .................................................................23

*Wojcik v. Empire Forklift, Inc.*,
  783 N.Y.S.2d 698 (App. Div. 2004) ...................................................................22

## FEDERAL STATUES

7 U.S.C. § 6501 .........................................................................................................9

7 U.S.C. § 6502(21) ...................................................................................................9

15 U.S.C. § 2301(6)(A) ...........................................................................................20

15 U.S.C. § 2310(d)(3) ............................................................................................22

## FEDERAL REGULATIONS

7 C.F.R. § 205.605(a) ......................................................................................*passim*

16 C.F.R. § 700.3(a) ................................................................................................21

21 C.F.R. § 101.22(a)(1) .....................................................................................12, 15

21 C.F.R. § 101.22(a)(3) ...........................................................................12-13, 15-16

21 C.F.R. § 172.510 .................................................................................................16

21 C.F.R. § 172.515(b) ....................................................................................*passim*

21 C.F.R. § 182.20 ..........................................................................................*passim*

21 C.F.R. § 182.60 ...................................................................................................12

21 C.F.R. § 184.1061(a) ..........................................................................................10

21 C.F.R. § 184.1736 ...............................................................................................19

21 C.F.R. § 700.3(b) ..................................................................................................8

21 C.F.R. § 700.3(k) ..................................................................................................8

40 C.F.R. § 180.910 ............................................................................................10-11

## COURT RULES

Fed. R. Civ. P. 12(b)(1) .................................................................................1, 5, 24

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 5

Fed. R. Civ. P. 8(a)(2)............................................................................................5

## PRELIMINARY STATEMENT

Defendant Weleda, Inc. ("Weleda" or "Defendant") seeks the entry of an Order dismissing the Complaint filed by Plaintiff Russell Hughes ("Plaintiff") on his own behalf and all others similarly situated pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as the Complaint fails to state a claim upon which relief can be granted.

This action concerns a number of Weleda's cosmetics Products (as defined below) that are certified natural under standards set forth by NATRUE, an international not-for-profit organization. The NATRUE seal is clearly displayed on products that have been certified to meet the strict standards for "natural cosmetics" established by NATRUE after "taking account of consumers' and manufacturers' expectations and needs,"[1] among other things. Despite this, Plaintiff alleges the representations of "Natural" and "Certified Natural" are "false, misleading, and deceptive because the Products contain multiple ingredients that are … synthetic." (Compl.[2] at ¶ 7.) In all, the Plaintiff identifies 41 Products and 24 allegedly synthetic ingredients, in different combinations in each Product. (Compl. at ¶¶ 1, 6, and 7.)

The Plaintiff's claims fail for numerous reasons. In the first instance, the Plaintiff admittedly only purchased two of the 41 Products on which he seeks to assert a claim. (Compl. at ¶ 31.) Furthermore, those two Products implicate less than half of the allegedly synthetic ingredients identified by the Plaintiff. (Compl. at ¶¶ 6 and 7.) Thus, under binding Second Circuit decisional law, the Plaintiff lacks class standing to assert claims for the 39 Products he did not purchase.

Additionally, in making his claim, the Plaintiff points to the Organic Foods Production Act of 1990 (the "OFPA") as defining "synthetic," but this legislation is utterly inapplicable and

---

[1] *See* www.natrue.org/activities/natrue-label/
[2] "Compl." refers to the Class Action Complaint filed by the Plaintiff (ECF Doc. 1).

the Plaintiff's purported definition fails as a matter of law. Furthermore, even assuming that the OFPA applies, the ingredients Plaintiff identifies in the Products are nonsynthetic under the OFPA and related regulations. Thus, the representations made on the Products are not misleading even using the Plaintiff's own definition.

The Plaintiff also fails to state a claim for a breach of an express warranty as the Plaintiff fails to allege privity with Weleda. This failure to allege privity also precludes the Plaintiff's claims for a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA"), breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. Additionally, the claims under the MMWA fail as the representations of "Natural" or "Certified Natural" are not written warranties under the act, and the Plaintiff's claim for a breach of the implied warranty of merchantability should be dismissed as the Plaintiff does not allege that the Products are not merchantable. Further, the Plaintiff's claim for a breach of the implied warranty of fitness for a particular purpose should be dismissed as the Plaintiff cannot establish that the Products are not fit for use as cosmetics. Lastly, the Plaintiff also lacks standing to assert claims for injunctive relief as he has alleged that he would not purchase the Products in the future.

Thus, for the reasons set forth and explicated in detail below, Weleda respectfully requests that the Court dismiss the Plaintiff's Complaint in its entirety.

## FACTS AND PROCEDURAL HISTORY

The Complaint alleges that Weleda's representations that certain of its products are "Natural" or "Certified Natural" are "false, misleading, and deceptive because the Products contain multiple ingredients that are … synthetic." (Compl. at ¶ 7.)[3] These "deceptive and

---

[3] All factual references are taken from Plaintiff's Complaint (ECF Doc. 1).

misleading business practices" are alleged to have taken place "throughout the State of New York and throughout the country." (Compl. at ¶ 1.) The following Products are identified in the Complaint:

- Weleda Men Active Shower Gel
- Weleda Pomegranate Creamy Body Wash
- Weleda Calendula Soap
- Weleda Evening Primrose Age Revitalizing Body Oil
- Weleda Sea Buckthorn Replenishing Body Lotion
- Weleda Evening Primrose Revitalizing Body Wash
- Weleda Citrus Hydrating Body Lotion
- Weleda Evening Primrose Age Revitalizing Hand Cream
- Weleda Pomegranate Regenerating Body Oil
- Weleda Citrus Creamy Body Wash
- Weleda Sea Buckthorn Hand Cream
- Weleda Salt Toothpaste
- Weleda Ratanhia Toothpaste
- Weleda Calendula Diaper Rash Cream
- Weleda Calendula Shampoo and Body Wash
- Weleda Calendula Body Cream
- Weleda Calendula Face Cream
- Weleda Stretch Mark Massage Oil
- Weleda Wheat Balancing Shampoo
- Weleda Oat Replenishing Conditioner
- Weleda Rosemary Conditioning Hair Oil

- Weleda Calendula Toothpaste
- Weleda Rose Soap
- Weleda Arnica Sports Shower Gel
- Weleda Evening Primrose Age Revitalizing Body Lotion
- Weleda Pomegranate Regenerating Body Lotion
- Weleda Wild Rose Pampering Body Lotion
- Weleda Skin Food – Small
- Weleda Pomegranate Regenerating Hand Cream
- Weleda Sea Buckthorn Creamy Body Wash
- Weleda Wild Rose Creamy Body Wash
- Weleda Children's Tooth Gel
- Weleda Plant Gel Toothpaste
- Weleda Calendula Cream Bath
- Weleda Calendula Body Cream
- Weleda While Mallow Diaper Rash Cream
- Weleda Calendula Body Lotion
- Weleda Calendula Body Oil
- Weleda Oat Replenishing Shampoo
- Weleda Millet Nourishing Shampoo
- Weleda Oat Replenishing Treatment

(Compl. at ¶ 1.)

The Complaint alleges that Weleda "manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that their Products are 'Certified Natural' and/or 'Natural.'" (Compl. at ¶ 2.) The Complaint further alleges that the "advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients." (*Id.*) The

Plaintiff asserts "that the term 'natural,' when used to describe goods such as the Products, means that the goods are free of synthetic ingredients." (Compl. at ¶ 11.) In turn, the Plaintiff defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources" and cites to the OFPA. (Compl. at ¶ 10.) The Plaintiff also intends to introduce "[s]urveys and other market research" to support his definition of "natural." (Compl. at ¶ 11.)

Plaintiff maintains that the Products labeled "Natural" and "Certified Natural" contain the following synthetic ingredients: Lactic Acid, Citric Acid, Xanthan Gum, Coco Glucoside, Tocopherol (Acetate), Linalool, Farnesol, Glyceryl Stearate/Glyceryl Stearate Citrate (Stearic Acid), Cetearyl Alcohol/Cetyl Alcohol/Stearyl Alcohol, Limonene, Geraniol, Citronellol, Citral, Calcium Chloride/Calcium Carbonate, Benzyl Benzoate, Sodium Chloride, Sodium Bicarbonate, Zinc Oxide, and Glycerin. (Compl. at ¶ 7.) The Plaintiff further maintains that "[c]onsumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label." (Compl. at ¶ 12.)

The Plaintiff alleges that he and the potential class members relied upon the misrepresentation that the Products were "Natural" and "Certified Natural." (Compl. at ¶ 20.) Plaintiff also alleges that he and the class members "[p]aid a premium price for the Products that were not what Defendant represented." (Compl. at ¶ 23.) Plaintiff further claims that he and the class members "were uniformly impacted by and exposed to this misconduct." (Compl. at ¶ 34.)

Plaintiff admits that he **did not** purchase the Products, except for two: Weleda Calendula Toothpaste and Weleda Men Active Shower Gel. (See Compl. at ¶ 31.) Plaintiff does not assert

when he purchased the Products, nor does he assert when he learned or should have learned about the alleged misrepresentation. (*See generally* Compl. at ¶ 4.)

## LEGAL ARGUMENT

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In so doing, a pleader must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In addition, the complaint must "give the defendants fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556. U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this evaluation, the Supreme Court has stated that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

A claim is also properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If a plaintiff lacks Article III standing, "a court has no subject matter jurisdiction to hear [the] claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). A plaintiff bears the burden of proving by a preponderance of the evidence that it has standing to sue, and "must allege facts that affirmatively and plausibly" suggest that it does. *Id.*

## II.   PLAINTIFF LACKS CLASS STANDING TO ASSERT CLASS CLAIMS FOR PRODUCTS HE DID NOT PURCHASE.

The Plaintiff lacks class standing under Second Circuit precedent. A "plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual... injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). Furthermore, the "set of concerns" should be "nearly identical." *Id.* at 163; *accord DiMuro v. Clinique Labs.*, LLC, 572 Fed. Appx. 27 (2d Cir. 2014). In the present matter, the Plaintiff's personal claims do not raise a nearly identical set of concerns to a purchaser of another one of the Products. As such, the Plaintiff lacks class standing with respect to the Products he did not purchase.

The Plaintiff has alleged that he only purchased Weleda Calendula Toothpaste and Weleda Men Active Shower Gel. (Compl. at ¶ 31). Thus, the Plaintiff has admittedly only purchased two out of the 41 Products for which he is seeking to assert claims on behalf of a putative class. (Compl. at ¶ 1). Furthermore, the Plaintiff references 24 ingredients that are

purportedly "synthetic." (Compl. at ¶ 7). However, only 11 of those ingredients are allegedly found in the two Products purchased by Plaintiff.[4] (*See* Compl. at ¶ 6.)

In *DiMuro*, the Second Circuit Court of Appeals held that the plaintiffs "lack[ed] class standing to bring claims for the four products that they did not purchase, and these claims were properly dismissed." 572 Fed. Appx. at 29. In that case, the plaintiffs claimed to have class standing to bring claims regarding the defendant's marketing of seven different cosmetic products, even though they had only purchased three of them. The Second Circuit noted that "each of the seven different products have different ingredients" and that "[e]ntirely unique evidence will, therefore, be required to prove that the 35-some advertising statements for each of the seven different Repairwear products are false and misleading." *Id.* Given the number of products, ingredients, claims, and potential variants of same, the Second Circuit declared that "[a]s a result, we cannot say that 'claims brought by a purchaser of' one product 'would raise a 'set of concerns' nearly identical to that of a purchaser' of another Repairwear product." *Id.*; *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161-62 (2d Cir. 2014) (rejecting the plaintiffs' assertion of class standing because the "alleged misconduct must be proved loan-by-loan and trust by trust").

Similarly, the present motion to dismiss should also be granted as the Plaintiff does not have class standing to assert claims for the Products he did not purchase. As noted above, the Plaintiff is seeking to establish a class involving the purchasers of 41 Products (of which the Plaintiff only purchased two), involving 24 ingredients that are allegedly "synthetic" (despite the Plaintiff's own claims only involving 11 of those ingredients). The volume of Products and

---

[4] "It is proper to consider the publicly available ingredient lists for [the Products] because the Plaintiffs made the ingredients a component of their consolidated complaint." *DiMuro*, 572 Fed. Appx. at 29, n.1 (citing *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001)).

ingredients is greater in the present matter than it was in *DiMuro*. As such, as the Second Circuit ruled, it cannot be said that the Plaintiff's claims would raise a nearly identical set of concerns for another purchaser of the Products. Thus, the claims for all Products, other than Weleda Calendula Toothpaste and Weleda Men Active Shower Gel, should be dismissed.

### III. PLAINTIFF'S RELIANCE ON THE OFPA IS MISPLACED.

The Plaintiff's claims that Weleda's "Natural" and "Certified Natural" representations are false is premised on an improper legal conclusion. As noted above, the Plaintiff claims that Weleda's Products are not "Natural" or "Certified Natural" as they "contain multiple ingredients that are … synthetic." (Compl. at ¶ 7.) In turn, the Plaintiff defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources" and cites to the OFPA. (Compl. at ¶ 10.)

In the first instance, the Plaintiff's subjective and misplaced definition of "Natural" is based on the USDA's definition of nonsynthetic ingredients as it pertains to food. This, however, is utterly inconsistent with manufactured cosmetic products sold for retail across the country and globally. (*See* Compl. at ¶ 9.) The Food and Drug Administration ("FDA") defines the term "cosmetic product" as meaning "a finished cosmetic the **manufacture** of which has been completed." 21 C.F.R. §700.3(b) (emphasis added); *see also* 21 C.F.R. §700.3(k) ("manufacture means the making of any cosmetic product **by chemical, physical, biological, or other procedures, including manipulation**, sampling, testing or control procedures applied to the product") (emphasis added). The FDA's definition recognizes that a cosmetic is comprised of ingredients that are processed to make the finished product. Therefore, the Plaintiff's definition of natural is not plausibly applicable to cosmetics.

Additionally, the OFPA was enacted by Congress "to establish national standards governing the marketing of certain agricultural products as organically produced products." 7 U.S.C.A. § 6501. However, the Plaintiff is not asserting any claims in this matter regarding "organic" labeling of Weleda's products. As such, the Plaintiff's reliance upon the OFPA is misplaced. *See Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (dismissing "all natural" claims holding definition of "synthetic" as "inapplicable" since "[p]laintiff does not allege that any of the Chips are sold as 'organic,' the National Organic Program rules and definitions do not apply to them").

## IV. THE INGREDIENTS ARE NONSYNTHETIC UNDER THE OFPA REGULATIONS.

While purporting to rely upon the definition of synthetic under the OFPA, the Plaintiff fails to fully recite the statutory definition, which is as follows:

> Synthetic. The term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, *except that such term shall not apply to substances created by naturally occurring biological processes.*

7 U.S.C.A. § 6502(21) (emphasis added). Thus, even assuming that Plaintiff's reliance on the OFPA is proper, the Code of Federal Regulations utterly invalidates the Plaintiff's claims that the identified ingredients are "synthetic."

### A. Lactic Acid Is Nonsynthetic.

In Paragraph 7.a. of the Complaint, the Plaintiff alleges that "Lactic Acid is a federally-listed synthetic substance" and cites a provision of the Code of Federal Regulations to support this allegation. (Compl. at ¶ 7.a.) A plain reading of the cited provision does not support this claim. The Plaintiff cites to 21 C.F.R. § 172.515(b), which actually references "lactic acid, butyl

9

ester, butyrate," which is another name for butyl butyryllactate – an entirely different substance than lactic acid.[5]

Additionally, the Plaintiff cites another provision to claim that lactic acid "must be synthetically formulated for use as a food additive." Again, the cited provision of the Code of Federal Regulations does not support this claim. The cited provision reads in whole:

> Lactic acid (C3H6O3, CAS Reg. Nos.: dl mixture, 598-82-3; l-isomer, 79-33-4; d-isomer, 10326-41-7), the chemical 2-hydroxypropanoic acid, **occurs naturally** in several foods. It is produced commercially either by fermentation of carbohydrates such as glucose, sucrose, or lactose, or by a procedure involving formation of lactonitrile from acetaldehyde and hydrogen cyanide and subsequent hydrolysis to lactic acid.

21 C.F.R. § 184.1061(a) (emphasis added). This provision specifically notes that lactic acid occurs naturally.

Furthermore, lactic acid is actually found to be "nonsynthetic" in the Code of Federal Regulations. In fact, lactic acid is listed as an allowed nonsynthetic, which can be used in organic products. See 7 C.F.R. § 205.605(a). It is also identified as "nonsynthetic" by the USDA, Agricultural Marketing Service, National Organic Program in its Guidance, Materials for Organic Crop Production. See NOP 5034-1.

Plaintiff's claims regarding lactic acid are not supportable, and therefore do not state a claim. Accordingly, the Court should therefore dismiss all of Plaintiff's claims to the extent they are based on lactic acid.

## B. Citric Acid Is Nonsynthetic.

The Plaintiff claims that citric acid is a synthetic substance and references a Technical Evaluation Report complied for the USDA. However, this ignores the clear and unambiguous

---

[5] See www.worldofchemicals.com/chemicals/chemical-properties/butyl-butyryl-lactate.html

language of the Code of Federal Regulations. The USDA specifically classifies citric acid, produced by microbial fermentation of carbohydrate substances, as nonsynthetic. 7 C.F.R. § 205.605(a). As such, Plaintiff's claims regarding citric acid are not supported or supportable. Thus, the Plaintiff fails to state a claim that Weleda's products containing citric acid are not natural, and the Court should therefore dismiss all of Plaintiff's claims to the extent they are based on citric acid.

### C. Tocopherol Is Nonsynthetic.

In the Complaint, the Plaintiff identifies "Tocopherol (Acetate)" as a synthetic ingredient found in Weleda's products. (Compl. at ¶ 7.e.) This claim, however, appears to conflate two different ingredients, tocopherol and tocopheryl acetate. As the ingredient the Plaintiff identifies does not exist, the Plaintiff's claims related to "Tocopherol (Acetate)" should be dismissed.

Setting this issue aside for the moment, the Plaintiff previously identified "tocopherol" as the ingredient it is questioning in Paragraph 6 of the Complaint. (*See* Compl. at ¶ 6.) In support of his claim that tocopherol is a synthetic ingredient, the Plaintiff cites to a portion of the Code of Federal Regulations, but the cited provision is erroneous and does not support any such claim. The Plaintiff alleges that tocopherol "is a synthetic, inert ingredient." (Compl. at ¶ 7.e.) The Code of Federal Regulations provision cited by the Plaintiff actually reads:

> Residues of the following materials are exempted from the requirement of a tolerance when used in accordance with good agricultural practice as inert (or occasionally active) ingredients in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest.

40 C.F.R. § 180.910. The word "synthetic" does not appear in this description.[6] Accordingly, the Court should dismiss all of Plaintiff's claims to the extent they are based on tocopherol.

### D.    Linalool, Limonene, Geraniol, and Citral Are Nonsynthetic.

In the Complaint, the Plaintiff misdirects the Court to the proper section of the Code of Federal Regulations addressing linalool, limonene, geraniol, and citral. The Plaintiff directs the Court to 21 C.F.R. § 182.60 titled "Synthetic flavoring substances and adjuvants." However, this ignores the general sections of the Code of Federal Regulations, which specifically address artificial flavoring and natural flavoring.

The Code of Federal Regulations defines artificial flavor as:

> Any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof. Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter *except where these are derived from natural sources*.

21 C.F.R. § 101.22(a)(1) (emphasis added). Thus, the Plaintiff's reference to 21 C.F.R. §182.60 must be evaluated in accordance with these provisions.

Each of these ingredients undoubtedly is derived from natural essential oils, all of which are considered natural flavors under the Code of Federal Regulations. Under the regulations, natural flavor is defined as:

> the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material,

---

[6] As an aside, the Plaintiff attempts to impugn tocopherol by associating it with pesticide formulations. In fact, tocopherol is listed as a "safener," 40 C.F.R. § 180.910, which is an ingredient "used in an insecticidal or fungicidal spray to prevent damage to trees and foliage by the other ingredients in the spray." *See* Merriam-Webster Dictionary.

meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. **Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20,** 182.40, and 182.50 and Part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. § 101.22(a)(3) (emphasis added).

On its website and on the Product packaging,[7] Weleda identifies linalool with an asterisk indicating that the identified ingredient is "from natural essential oils." Furthermore, on its website, Weleda describes "linalool" as follows:

> Fragrance (Parfum) from essential oils. Linalool is a[n] occurring component of essential oils, such as Lavender Oil, Bergamot Oil, Geranium Oil and Ylang-Ylang Oil.

Nucifora Decl.[8] at Ex. 42. In fact, the Code of Federal Regulations identifies the essential oils of bergamot, geranium, lavender, and ylang-ylang as natural flavors. 21 C.F.R. § 182.20. As such, the Plaintiff fails to state a claim that Weleda's Products containing linalool are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on linalool.

---

[7] "For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (citations omitted). Furthermore, "'[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.'" *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 269 (S.D.N.Y. 2013) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006)).

[8] "Nucifora Decl." refers to the Declaration of Christopher Nucifora, Esq. in Support of Defendant Weleda Inc.'s Motion to Dismiss the Complaint of Plaintiff Russell Hughes, dated January 8, 2018, and submitted herewith.

Additionally, limonene is identified with an asterisk on Weleda's website and product packaging indicating that the identified ingredient is "from natural essential oils." Furthermore, on its website, Weleda describes "limonene" as follows:

> Fragrance (Parfum) from essential oils. Limonene is a[n] occurring component of essential oils, such as Rosemary Oil, Lemon Oil, Orange Oil, Grapefruit Oil, Bergamot Oil, Fennel Oil and Lavender Oil.

Nucifora Decl. at Ex. 43. Again, the Code of Federal Regulations identifies the essential oils of rosemary, lemon, orange, grapefruit, bergamot, fennel and lavender as natural flavors. 21 C.F.R. § 182.20. As such, the Plaintiff fails to state a claim that Weleda's products containing limonene are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on limonene.

As with the other ingredients in this section, geraniol is identified on Weleda's website and product packaging with an asterisk indicating that the identified ingredient is "from natural essential oils." Furthermore, on its website, Weleda describes "geraniol" as follows:

> Fragrance (Parfum) from essential oils. Geraniol is a[n] occurring component of essential oils, such as Rose Oil, Geranium Oil, Palmarose Oil, Lavender Oil and Ylang-Ylang Oil.

Nucifora Decl. at Ex. 44. Yet again, the Code of Federal Regulations identifies the essential oils of rose, geranium, palmarose, lavender and ylang-ylang as natural flavors. 21 C.F.R. § 182.20. Therefore, the Plaintiff fails to state a claim that Weleda's Products containing geraniol are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on geraniol.

Similarly, citral also is identified on the website and packaging with an asterisk indicating that it is "from natural essential oils." Furthermore, on its website, Weleda describes "citral" as follows:

14

> Fragrance (Parfum) from essential oils. Citral is a naturally
> occurring component of essential oils, such as Lemon Oil, Orange
> Oil, Lemon-Grass Oil and Bergamot Oil.

Nucifora Decl. at Ex. 45. As with the aforementioned ingredients, the Code of Federal

Regulations identifies the essential oils of lemon, orange, lemon grass, and bergamot as natural

flavors. 21 C.F.R. § 182.20. As such, the Plaintiff fails to state a claim that Weleda's Products

containing citral are not "natural," and the Court should dismiss all of Plaintiff's claims to the

extent they are based on citral.

### E.     Farnesol, Citronellol, and Benzyl Benzoate Are Nonsynthetic.

In claiming that farnesol, citronellol, and benzyl benzoate are synthetic, the Plaintiff

conveniently cites to the incorrect section of the Code of Federal Regulations. The Plaintiff

directs the Court to 21 C.F.R. § 172.515 titled "Synthetic flavoring substances and adjuvants."

However, this again ignores the general sections of the Code of Federal Regulations, which

address artificial flavoring and natural flavoring.

As previously noted, artificial flavor is defined in the regulations as:

> Any substance, the function of which is to impart flavor, which is
> not derived from a spice, fruit or fruit juice, vegetable or vegetable
> juice, edible yeast, herb, bark, bud, root, leaf or similar plant
> material, meat, fish, poultry, eggs, dairy products, or fermentation
> products thereof. Artificial flavor includes the substances listed in
> §§ 172.515(b) and 182.60 of this chapter *except where these are
> derived from natural sources*.

21 C.F.R. § 101.22(a)(1) (emphasis added).

On the other hand, natural flavor is defined as:

> the essential oil, oleoresin, essence or extractive, protein
> hydrolysate, distillate, or any product of roasting, heating or
> enzymolysis, which contains the flavoring constituents derived
> from a spice, fruit or fruit juice, vegetable or vegetable juice,
> edible yeast, herb, bark, bud, root, leaf or similar plant material,
> meat, seafood, poultry, eggs, dairy products, or fermentation

> products thereof, whose significant function in food is flavoring rather than nutritional. **Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and Part 184 of this chapter, and the substances listed in § 172.510 of this chapter.**

21 C.F.R. § 101.22(a)(3) (emphasis added). Thus, the Plaintiff's reference to 21 C.F.R. §172.515(b) must be evaluated in accordance with these provisions.

On the website and packaging, farnesol is identified with an asterisk indicating that it is "from natural essential oils." Furthermore, on its website, Weleda describes "farnesol" as follows:

> Fragrance (Parfum) from essential oils. Farnesol is a[n] occurring component of essential oils, such as Jasmine, Ylang-Ylang Oil, Rose Oil and Neroli.

Nucifora Decl. at Ex. 46. In fact, the Code of Federal Regulations identifies the essential oils of jasmine, neroli, rose, and ylang-ylang as natural flavors. 21 C.F.R. § 182.20. As such, the Plaintiff fails to state a claim that Weleda's Products containing farnesol are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on farnesol.

Similarly, citronellol is identified with an asterisk on Weleda's website and product packaging indicating that it is "from natural essential oils." Furthermore, on its website, Weleda describes "citronellol" as follows:

> Fragrance (Parfum) from essential oils. Citronellol is a[n] occurring component of essential oils, such as Geranium Oil, Muscatel Sage, Sandalwood and Citronella Oil.

Nucifora Decl. at Ex. 47. Again, the Code of Federal Regulations identifies the essential oils of geranium, muscatel (clary) sage, sandalwood, and citronella as natural flavors. 21 C.F.R. §§ 172.510 and 182.20. As such, the Plaintiff fails to state a claim that Weleda's Products

containing citronellol are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on citronellol.

Lastly, Weleda's website and product packaging identifies benzyl benzoate with an asterisk indicating that it is "from natural essential oils." Furthermore, on its website, Weleda describes "benzyl benzoate" as follows:

> Fragrance (Parfum) from pure essential oils. Benzyl Benzoate is a [sic] occurring component of essential oils, such as Jasmine Oil and Ylang-Ylang Oil.

Nucifora Decl. at Ex. 48. Again, the Code of Federal Regulations identifies the essential oils of jasmine and ylang-ylang as natural flavors. 21 C.F.R. § 182.20. As such, the Plaintiff fails to state a claim that Weleda's Products containing benzyl benzoate are not "natural." The Court should therefore dismiss all of Plaintiff's claims to the extent they are based on benzyl benzoate.

### F. Cetearyl Alcohol and Stearyl Alcohol Are Nonsynthetic.

In the Complaint, the Plaintiff points to the Code of Federal Regulations in support of its claims that cetearyl alcohol and stearyl alcohol are synthetic. However, the cited provision does not reference cetearyl alcohol or stearyl alcohol at all. *See* 21 C.F.R. § 172.515(b). As such, this claim is unsupported. The Court should therefore dismiss all of Plaintiff's claims to the extent they are based on cetearyl alcohol and stearyl alcohol as such claims do not give Defendant "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### G. Calcium Chloride Is Nonsynthetic.

The Plaintiff fails to state a claim with respect to calcium chloride as the Plaintiff does not identify any Weleda Product containing that ingredient and calcium chloride is a nonsynthetic ingredient. In the first instance, the Plaintiff does not allege or otherwise identify whatsoever a Weleda Product containing calcium chloride. Indeed, it is not listed as an

ingredient in any of the Products identified by the Plaintiff in either Paragraph 6 or Paragraph 1 of the Complaint. As such, the Plaintiff fails to state a claim in connection with calcium chloride as such claims do not give Defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Furthermore, as part of the National Organic Program, the USDA specifically identifies calcium chloride as a nonsynthetic. 7 C.F.R. § 205.605(a). Even assuming that the Plaintiff correctly identified calcium chloride as an ingredient, he still fails to state a claim that a product containing calcium chloride is not "natural," and the Court should therefore dismiss all of Plaintiff's claims to the extent they are based on calcium chloride.

### H. Calcium Carbonate Is Nonsynthetic.

In the Complaint, the Plaintiff does not cite to any specific regulatory provision to support his claim that calcium carbonate is synthetic. Indeed, the USDA specifically lists calcium carbonate as nonsynthetic in connection with the National Organic Program. 7 C.F.R. § 205.605(a). As such, the Plaintiff fails to state a claim that a product containing calcium carbonate is not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on calcium carbonate as such claims do not give Defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### I. Sodium Chloride Is Nonsynthetic.

The Plaintiff does not cite any regulation or federal publication to support his claim that sodium chloride is synthetic. In fact, sodium chloride is specifically identified as "nonsynthetic" by the USDA, Agricultural Marketing Service, National Organic Program in its Guidance, Materials for Organic Crop Production. *See* NOP 5034-1. Thus, the Plaintiff fails to state a claim that Weleda's Products containing sodium chloride are not "natural," and the Court should

dismiss all of Plaintiff's claims to the extent they are based on sodium chloride as they do not give "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

J.  **Sodium Bicarbonate Is Nonsynthetic.**

The Plaintiff alleges that sodium bicarbonate is "synthetic." In support of that claim, the Plaintiff cites to 21 C.F.R. § 184.1736. However, the cited provision does not support any such claim. In fact, the word "synthetic" does not appear in that provision at all.

Furthermore, sodium bicarbonate is actually identified as "nonsynthetic" in the USDA's National Organic Program regulations. *See* 7 C.F.R. § 205.605(a). It is also identified as "nonsynthetic" by the USDA, Agricultural Marketing Service, National Organic Program in its Guidance, Materials for Organic Crop Production. *See* NOP 5034-1. Thus, the Plaintiff fails to state a claim that Weleda's products containing sodium bicarbonate are not "natural," and the Court should dismiss all of Plaintiff's claims to the extent they are based on sodium bicarbonate as they do not give Defendant "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

K.  **As the Ingredients Are Not Synthetic, the Products Must Be "Natural" or "Certified Natural" under Plaintiff's Definition.**

The Plaintiff defines "Natural" products as those not including "synthetic" ingredients, with "synthetic" defined by the USDA in its regulations. As the ingredients identified in II.A through II.J, *supra*, are not "synthetic" under the Code of Federal Regulations, by applying the Plaintiff's own definition, Plaintiff has failed to give Defendant "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. As such, the Court should dismiss any claim asserting that Products containing the ingredients are not "natural."

## V.   **PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY FAILS.**

The Plaintiff cannot assert a claim for breach of express warranty as he failed to allege privity. Under New York law, "privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (citing *DiBartolo v. Abbott Laboratories*, 914 F. Supp. 2d 601, 623-24 (S.D.N.Y. 2012)).

In the present instance, the Plaintiff failed to plead privity or that he was personally injured. Instead, Plaintiff admits that he purchased two of the Products from a third party, not from Weleda directly. (*See* Compl. at ¶ 31.) Such a failure is fatal to the Plaintiff's breach of express warranty claim under New York law. *See Ebin v. Kangadis Food Inc.*, 13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174, at *6 (S.D.N.Y. Dec. 19, 2013) (dismissing breach of express warranty claim that "100% Pure Olive Oil" label was misleading as plaintiff failed to plead privity); *Koenig*, 995 F. Supp. 2d at 290 (dismissing breach of express warranty claim for "fat-free" labelling of milk products as plaintiffs failed to plead privity). As such, the Plaintiff's claim for breach of express warranty should be dismissed.

## VI.   **PLAINTIFF CANNOT ASSERT A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT.**

Plaintiff cannot assert a claim under the MMWA for representations that the listed products are "Certified Natural" and/or "Natural" because these statements fail to meet the definition of a warranty under the MMWA. Specifically, the MMWA narrowly defines a warranty as: "written affirmation … which relates to the nature of the material or workmanship and ***affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.***" 15 U.S.C. § 2301(6)(A) (emphasis added).

Here, representations of "Certified Natural" or "Natural" are not written warranties under the MMWA because the representations do not guarantee a defect-free product, nor promise levels of performance over a specific time period. It is well settled that a written affirmation of fact, e.g. that the Products are "Certified Natural," is not a written warranty under the MMWA unless it promises that it "will meet a specified level of performance over a specified period of time." *Id.* "Certified natural" is not a claim of performance, and nothing on the Product labels promise a specified level of performance over a specified period time. *See id.* At most, the "Natural" statement is a product description, not actionable under the MMWA. *See, e.g., In re Frito-Lay N. Am., Inc., All Nat. Litig.*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *17, *27 (E.D.N.Y. Aug. 29, 2013) (dismissing MMWA claim as "All Natural" representation "does not constitute a written warranty"); *Hairston v. South Beach Bev. Co.*, CV 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) (dismissing MMWA claim as "all natural with vitamins" does not constitute a written warranty); *accord Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014) (dismissing MMWA claim as "Restores Enamel" is a product description, and not a promise of performance over time).

The Federal Trade Commission, which administers the MMWA, interprets Section 2301(6)(A) in exactly this way. *See* 16 C.F.R. § 700.3(a) ("A written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty.' A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty.").

Furthermore, a claim under the MMWA is derivative of a state law warranty claim. *Chiarelli v. Nissan N. America, Inc.*, 14-CV-4327, 2015 U.S. Dist. LEXIS 129416, at *26

(E.D.N.Y. Sept. 25, 2015). As the Plaintiff lacks privity, *supra*, he cannot assert a breach of express warranty claim. Thus, a derivative MMWA claim must also fail.

Lastly, Plaintiff does not allege sufficient facts to meet the MMWA's amount-in-controversy requirement. The MMWA declares that "[n]o claims shall be cognizable," even in a putative class action, "if the amount in controversy of **any individual claim** is less than the sum or value of $25." 15 U.S.C. § 2310(d)(3) (emphasis added). The Plaintiff has not alleged that the value of each individual class member's claim exceeds the $25 threshold.

**VII. PLAINTIFF'S CLAIMS OF BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND WARRANTY OF FITNESS FOR PARTCULAR PURPOSE SHOULD BE DISMISSED.**

The Plaintiff has failed to state a claim for a breach of either the implied warranty of merchantability or the implied warranty of fitness for a particular purpose. Both implied warranties require a showing of privity, which the Plaintiff has not alleged. Additionally, the Plaintiff does not allege that the Products are not merchantable or fit for their ordinary purpose as body cleansers and lotions.

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700 (App. Div. 2004). However, "[t]he implied warranty of fitness for a particular purpose … does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986).

Plaintiff has failed to state a claim for breach of either implied warranty in the Complaint because "absent any privity of contract between Plaintiff and Defendant, [an implied warranty]

22

claim cannot be sustained as a matter of law except to recover for personal injuries." *Weisblum v. Prophase Labs., Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011)); *see also Abraham,* 795 F.2d at 249 ("To have a cause of action for breach of an implied warranty of fitness … privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller."); *Ebin*, 2013 U.S. Dist. LEXIS 174174, at *6; *Westchester Cnty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983).

In the present matter, the Plaintiff failed to plead privity of contract. The Plaintiff merely pleaded that he purchased the Products from a third party and paid more than he would have otherwise been willing to pay because the Products were allegedly labeled with misleading information. This is insufficient as a matter of law.

The Plaintiff's Complaint fails to assert implied warranties of merchantability and fitness for a particular purpose because he does not—and cannot—assert that the products are not merchantable or fit for their ordinary uses as personal care products. (*See generally* Compl. at ¶ 1.) Instead, the Complaint contends that Weleda has breached implied warranties by representing the products as "Certified Natural" or "Natural." (*See* Compl. at ¶¶ 101, 107.) These allegations are specific representations, not characteristics that affect the products' merchantability or fitness for a particular purpose. As such, these claims should be dismissed. *See, e.g., Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 895-97 (C.D. Ca. 2013) (dismissing implied warranty claims based on representation of "all natural flavors" in soda, as it did not affect the soda's merchantability and fitness for a particular purpose); *Ackerman v. Coca-Cola Co.*, CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *95 (E.D.N.Y. Jul. 21, 2010) ("A warranty of merchantability … does not mean that the product will fulfill a buyer's every

23

expectation, but rather simply provides for a minimum level of quality"); *Viscusi v. Proctor & Gamble*, 05-CV-01528, 2007 U.S. Dist. LEXIS 51307, at *37-38 (E.D.N.Y. July 16, 2007) ("Despite plaintiff's allegations that she sustained an allergic reaction as a result of using Clairol Nice 'N Easy to color her hair, plaintiff has failed to establish that the product was unfit for its intended purpose of coloring hair."), *aff'd sub. nom, Viscusi v. P & G-Clairol, Inc.*, 346 Fed. Appx. 715 (2d Cir. 2009); *Pai v. Springs Indus., Inc.*, 795 N.Y.S.2d 98, 99 (2d Dep't 2005) ("When a product is widely sold and easily purchased, the mere fact that an infinitesimal number experienced a discomforting reaction is not sufficient to establish that the product was not fit for the purposes intended").

## VIII. <u>PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR INJUNCTIVE RELIEF.</u>

The Plaintiff lacks Article III standing to assert injunctive relief claims because he is aware of the purportedly suspect ingredients contained in Weleda's Products and admits he will not purchase the products "as is." This admission is fatal to Plaintiff's request for injunctive relief and the Court should dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(1). To establish standing to seek injunctive relief, a plaintiff must show a "real and imminent" threat of future harm and cannot rely on past injury alone. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.").

In the present instance, Plaintiff asserts that the only way he would purchase the products again is "if the ingredients were changed." (*See* Compl. at ¶¶ 31, 46, 48.) Plaintiff alleges that he does not want to purchase the Products already on the market—he thinks they are deceptively advertised. (*See id.* at ¶¶ 24, 32.) Instead, he asserts that *if* Weleda someday produced *different*

24

products, he might like to purchase it. (*See id.* at ¶¶ 31, 46, 48.) Consequently, Plaintiff lacks standing because he admits he would not purchase the Products "as is" and is, therefore, not likely to suffer any future injury. This warrants dismissal of his request for injunctive relief. *See Nicosia*, 834 F.3d at 239; *see also Atik v. Welch Foods, Inc.*, 15-CV-5405, 2016 U.S. Dist. LEXIS 136056, at *19-20 (E.D.N.Y. Sept. 30, 2016); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015); *Tomasino v. Estee Lauder Companies, Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).

## CONCLUSION

As detailed above, the Plaintiff's Complaint should be dismissed in its entirety. Given the Plaintiff's lack of class standing, the unreasonableness of Plaintiff's definition of "Natural" and "Certified Natural," the lack of privity, and for other reasons set forth herein, Weleda respectfully requests that the Court dismiss the Complaint.

Respectfully submitted,

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By:      /s/Christopher Nucifora
            Christopher Nucifora
            Erik E. Sardiña
            21 Main Street, Suite 251
            Hackensack, New Jersey 07601
            Tel:   201-708-8207
            Fax:   201-488-6652
            cnucifora@kdvlaw.com
            esardina@kdvlaw.com

Dated: January 8, 2018