UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RUSSELL HUGHES, individually
on behalf of himself and all others similarly
situated,                                                            **7:17-cv-02494** (CS)(JCM)

            Plaintiff,

   -against-

WELEDA, INC.,

            Defendant.
----------------------------------------------------------X


## <u>Plaintiff's Memorandum of Law in Opposition<br>to Defendant's Motion to Dismiss the<br>Complaint Under Rules 12(b)(1) and 12 (b)(6)</u>


Dated: February 28, 2018

Joseph Lipari, Esq.
Jason P. Sultzer, Esq.
Adam R. Gonnelli, Esq.
The Sultzer Law Group, P.C
85 Civic Center Plaza, Suite 104
Tel: (845) 483-7100
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com
gonnellia@thesultzerlawgroup.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES……………………………………………………...……iii

I.      INTRODUCTION……………………………………………………….…....1

II.     LEGAL STANDARDS………………………………………………….…..1

III.    MR. HUGHES HAS CLASS STANDING……………………………….…2

        A.  Mr. Hughes' Claims Implicate The "Same Set of Concerns" And Are "Sufficiently Similar" To Those Of Consumers Of Products He Did Not purchase……………………………………………………………4

        B.  The Issue of Class Standing Should Be Addressed at The Class Certification Stage……………..………………………………………6

        C.  Differences In The Ingredients Do Not Defeat Class Standing..........................8

        D.  *DiMuro* Is Distinguishable………………………………………...……8

IV.   Plaintiff Has Pleaded That the Products are Not "Natural" In Sufficient Detail…………9

        A.  Claims concerning benzyl benzoate, citral, citronellol, farnesol, geraniol, limonene, and linalool………………………………………………12

        B.  Claims concerning lactic acid……………………………...…………13

        C.  Claims concerning sodium bicarbonate………………………….....…13

        D.  Claims concerning citric acid………………………………….…13

        E.  Claims concerning cetearyl alcohol………………………….…...14

        F.  Claims concerning calcium carbonate………………….…………14

        G.  Claims concerning tocopherol…………………………...…………14

V.    Plaintiff Has Adequately Alleged that the "Certified Natural" Representation Misleads Consumers………………………………………………….…15

VI.  Plaintiff Has Stated Claims for Breaches of Warranties…………………………15

        A.  Plaintiff Has Stated a claim for breach of express warranty……………………15

B.  Plaintiff's Magnuson-Moss Warranty Act Claim Should Not Be Dismissed…....17

C.  Plaintiff Withdraws His Implied Warranty Claims………………………….....19

VII.   Plaintiff Has Standing to Seek Injunctive Relief……………………………….....19

VIII.   CONCLUSION………………………………………………………………………...22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986)...................................................................................17

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)..........................20

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)...................10, 11

*Aguiar v. Merisant Co.*,
   No. 14-00670, 2014 U.S. Dist. LEXIS 165301 (C.D. Cal. March 24, 2014) ........................11

*Albert v. Blue Diamond Growers*,
   151 F. Supp. 3d 412 (S.D.N.Y. 2015)...................................................................21

*In re Amla Litig.*,
   No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950 (S.D.N.Y. Oct. 24, 2017)..........................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................1, 2, 10, 12

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   No. C-11-2910, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)............................8

*Atik v. Welch Foods, Inc.*,
   No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sept. 30, 2016) ..............7, 8, 15

*Ault v. J.M. Smucker Co.*,
   No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014)...................10, 18

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
   No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015).........................22

*Bautista v. Cytosport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016).....................................................................4

*Belfiore v. Procter & Gamble Co.*,
   94 F. Supp. 3d 440 (E.D.N.Y. 2015) ...................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................1, 2, 10, 12

*Brady v. Basic Research, LLC*,
   101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...............................................5, 9, 16, 17, 18

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ...................................................................4

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016)...............................................4, 5, 6, 7, 9, 11

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (C.D. Cal. 2012) ............................................................5, 7

*Cent States Se & Sw Areas Health and Welfare Fund v. Merck-Medco Managed*
   *Care, LLC*, 504 F.3d 229 (2d Cir. 2007) ...........................................................3

*Cortlandt Street Recovery v. Hellas Telecom.*,
   790 F.3d 411 (2d Cir. 2015).................................................................................2

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) ..........................................................................21

*Diaz v. Paragon Motors of Woodside, Inc.*,
   424 F. Supp. 2d 519 (E.D.N.Y. 2006) .............................................................18

*DiMuro v. Clinique Labs., LLC*,
   572 Fed. App'x 27 (2d Cir. 2014)..............................................................5, 6, 8, 9

*Ebin v. Kandangis Food Inc.*,
   No. 13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013)...................16, 17

*Forcellati v. Hyland's Inc.*,
   876 F. Supp. 2d. 1155 (C.D. Cal. 2012) ..........................................................6, 7

*In re Frito-Lay North America, Inc.*,
   No. 12-MDL-2413, 2013 U.S. Dist. LEXIS 123824
   (E.D.N.Y. Aug 29, 2013)..........................................................3, 6, 7, 11, 18

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................11, 16

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) .....................................................................20

*Hacocha v. Nestle Purina Petcare Co.*,
   No. 15-CV-5489, 2016 U.S. Dist. LEXIS 107097 (Aug. 12, 2016)................................2, 5, 9

*Hart v. BHH, LLC*,
   No. 15-cv 4804, 2016 U.S. Dist. LEXIS 59943 (S.D.N.Y. May 5, 2016)................................9

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015).....................................................................11

*Hishon v. King*,
    467 U.S. 69 (1984)....................................................................................................2

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................................12

*James v. Penguin Grp. (USA) Inc.*,
    No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769 (S.D.N.Y. Apr. 11, 2014).........21

*Janney v. General Mills*,
    No. 12-cv-03919, 2014 U.S. Dist. LEXIS 41452 (N.D. Cal. Mar. 26, 2014) ........11

*Jesmer v. Retail Magic, Inc.*,
    863 N.Y.S.2d 737 (2d Dep't. 2008).......................................................................16

*Jou v. Kimberly-Clark Corp.*,
    13-03075 JSC, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013) ...........11

*Jovel v. I-Health, Inc.*,
    No. 12-CV-5614, 2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sep. 27, 2013).......4, 5

*Karlin v. IVF America, Inc.*,
    93 N.Y.2d 282, 712 N.E.2d 662 (N.Y. 1999) .......................................................21

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)...............................................................16, 17

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)....................................................................19

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .............................................................................6

*Mahoney v. Endo Health Solutions, Inc.*,
    No. 15-CV-9841, 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016) ..............15, 16, 17

*Manier v. L'Oreal U.S.A., Inc.*,
    No. 16-cv-6593, 2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) ............7

*Murrin v. Ford Motor Co.*,
    756 N.Y.S.2d 596 (2d Dep't. 2003).......................................................................16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2nd Cir. 2012)...........................................................3, 4, 5, 6, 7, 8

*Nicosia v. Amazon.com, Inc.*,
   84 F. Supp. 3d 142 (E.D.N.Y. 2015) ...............................................................20, 22

*Prue v. Fiber Composites, LLC*,
   No. 11-CV-3304, No. 11-CV-3304, 2012 U.S. Dist.
   LEXIS 54027 (E.D.N.Y. Apr. 17, 2012) ...............................................................16

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 553 (S.D.N.Y. 2013)...............................................................4, 5, 7

*Randy Knitwear, Inc. v. Am. Cyanamid Co.*,
   11 N.Y.2d 5 (1962) ...............................................................16

*Reid v. GMC Skin Care USA Inc.*,
   No. 8:15 -cv-277, 2016 U.S. Dist. LEXIS 14001 (N.D.N.Y. January 15, 2016) ...........7, 8, 20

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.*,
   No. MD 16-2695 JB/LF, 2017 U.S. Dist. LEXIS 210549
   (D.N.M. Dec. 21, 2017) ...............................................................17

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7,
   2015) ...............................................................10, 11

*Segovia v. Vitamin Shoppe, Inc.*,
   No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171 (S.D.N.Y. Feb. 5, 2016)...........................6, 9

*Sitt v. Nature's Bounty, Inc.*,
   No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564
   (E.D.N.Y. Sep. 26, 2016)...............................................................2, 10, 15, 17, 18

*Szymczak v. Nissan N. Am., Inc.*,
   No. CV 7493, 2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011) ...............................2

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...............................................................22

*Vicuna v. Alexia Foods, Inc.*,
   No. 11-CV-6119, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ...................11, 18

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015)...............................................................16, 19

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...............................................................10

**Statutes**

15 U.S.C. 2301(6)(A).................................................................................................17

15 U.S.C. § 2310(d)(3) .........................................................................................17, 18

21 C.F.R. §172.515..................................................................................................14

21 C.F.R. § 184.1061(a) ...........................................................................................13

21 C.F.R. §184.1736 ................................................................................................13

Class Action Fairness Act .........................................................................................19

California Unfair Competition Law .............................................................................21

Magnuson-Moss Warranty Act ..................................................................................17

Organic Foods Production Act.................................................................................9, 10

Fed. R. Civ. P. 12(b)(1)..............................................................................................7

Fed. R. Civ. P. 12(b)(6).............................................................................................1

Fed. R. Civ. P. 23 ...................................................................................................6, 7

## I.        INTRODUCTION

This case is about whether a reasonable consumer would consider ingredients like cetearyl alcohol, calcium carbonate and cheaper synthetic versions of natural substances to be "natural."

Defendant Weleda, Inc., sells personal care products bearing one of two representations: that the product is "natural," or "Certified Natural."  Mr. Hughes, the plaintiff, has alleged in great detail why many of the ingredients in the products cannot be considered "natural."

In its motion to dismiss plaintiff's claims, Weleda attacks plaintiff's "class standing" in an attempt to narrow the case from the list of forty-one products which plaintiff claims have synthetic ingredients to the two products purchased by Mr. Hughes.  However, under Second Circuit law, a plaintiff has class standing if the products are "sufficiently similar" and the plaintiff's claims invoke the "same set of concerns" as do the unpurchased products.  Here, all the products have one of two representations, so the concerns are identical.

Next, Weleda attacks the allegations concerning the ingredients Mr. Hughes believes are not natural.  Mostly, Weleda makes factual arguments that are more suited for summary judgment or trial, or argues that plaintiff is required to cite regulations that prove his claims. These attacks are largely irrelevant at the pleading stage and plaintiff has provided more than enough detail under *Iqbal* and *Twombly*.

Third, Weleda argues that plaintiff has not stated claims for breaches of federal and state warranties and has no standing to seek injunctive relief. On these issues, however, the weight of authority favors Mr. Hughes.

## II.        LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) enables the court "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." *Szymczak v. Nissan N. Am., Inc*., No. CV 7493, 2011 U.S. Dist. LEXIS 153011, at *18 (S.D.N.Y. Dec. 16, 2011). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King,* 467 U.S. 69, 73 (1984). The claims must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a plaintiff is obliged to buttress its claims with factual allegations that allow the court to draw the reasonable inference that defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). The Supreme Court cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly* at 556.

For a 12(b)(1) motion the issue is the court's subject matter jurisdiction and whether the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt Street Recovery v. Hellas Telecom.*, 790 F.3d 411, 416-17 (2d Cir. 2015). The burden to demonstrate jurisdiction falls on the plaintiff. *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *6 (E.D.N.Y. Sep. 26, 2016). Like a 12(b)(6) motion, the Court must assume the truth of well-pleaded allegations. *Hacocha v. Nestle Purina Petcare Co.,* No. 15-CV-5489, 2016 U.S. Dist. LEXIS 107097 at *28 (Aug. 12, 2016) (noting that the same standard of review applies to 12(b)(1) and 12(b)(6) motions).

## III.      MR. HUGHES HAS CLASS STANDING

Article III standing, which is not at issue here, is distinct from class standing. "[O]nce there is at least one named plaintiff for each named defendant "who can assert a claim directly against that defendant, …[Article III] standing is satisfied, and only then will the inquiry shift to

a class action analysis". *In re Frito-Lay North America, Inc.*, No. 12-MDL-2413, 2013 U.S. Dist. LEXIS 123824 at *38 (E.D.N.Y. Aug 29, 2013) *(quoting Cent States Se & Sw Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007)).

Plaintiff purchased the Weleda Calendula Toothpaste and the Weleda Men Active Shower Gel. *See* Plaintiff's Complaint dated April 6, 2017 ("Comp.") ¶ 31. The container of the toothpaste reads "natural oral protection." The container of the shower gel reads "Certified Natural Body Care." Comp. ¶ 6. There is no question that Mr. Hughes has Article III standing to assert claims concerning the alleged misrepresentations on those two specific products. The question raised by Weleda's 12(b)(1) motion is whether he has standing to assert claims on behalf of the purchasers of the other Weleda products bearing identical misrepresentations. The answer is yes.

The parties agree that *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2nd Cir. 2012) is the Second Circuit's leading case on the issue of class standing. Def. Br.[1] at 6.

*NECA-IBEW* concerned the purchase of mortgage-backed securities sold by 17 different trusts in 17 separate offerings. The district court concluded that the plaintiff only had standing to bring claims on behalf of investors who purchased securities from the same two trusts the plaintiff did. The Second Circuit reversed and set forth a two-part test for "class standing":

> Plaintiff has suffered actual injury as a result of the defendant's conduct; and that the defendant's conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant.

---

[1] "Def. Br." refers to the Memorandum of Law in Support of Defendant Weleda, Inc.'s Motion to Dismiss Plaintiff Russell's Complaint dated January 8, 2018.

*Id.* at 162.  The first prong is not at issue here.  For the second prong, Mr. Hughes' claims are based on the two representations that are identical to those Weleda made to the rest of the class, and thus implicate the "same concerns" and are "sufficiently similar" to the claims of purchasers of the other products.

### A.    Mr. Hughes' Claims Implicate The "Same Set of Concerns" And Are "Sufficiently Similar" To Those Of Consumers Of Products He Did Not Purchase.

As this Court noted in *Bautista v. Cytosport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016), "subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer laws protection for products that he did not purchase, so long as those products, and the false and deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff did purchase." (citations and internal quotation marks omitted).  *See also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 553, 541 (S.D.N.Y. 2013) ("The majority of the courts that have carefully analyzed the question hold that [standing exists] so long as the products and alleged misrepresentations are substantially similar.") (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)); *Jovel v. I-Health, Inc.*, No. 12-CV-5614, 2013 U.S. Dist. LEXIS 139661 at *29 (E.D.N.Y. Sep. 27, 2013) ("The critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased.") (internal quotation omitted).

Most courts have found food and cosmetic products that make similar representations on their labels across product lines "sufficiently similar" to satisfy class standing at the pleading stage.  *See NECA-IBEW* at 162 (courts should examine the "nature and content of the specific misrepresentations alleged in determining class standing.").

In *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016), the plaintiff purchased two of 41 hair care products at issue.  The representations on the containers were

"natural", "all natural", "naturally derived", "plant based" and/or "containing no harsh chemicals ever!". The representations the plaintiff relied upon were only the "natural" and "no harsh chemicals ever!" representations. *Id.* at 559. After reviewing the Second Circuit's decisions in *NECA-IBEW* and *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d Cir. 2014*)*, the court concluded "Although the unpurchased products may contain different ingredients compared to the purchased products…the misrepresentations claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchase products." *Buonasera* at 563.

 *Quinn* involved six glucosamine supplements with two similar, but not identical, representations concerning the products' supposed ability to rebuild cartilage. The six products also "var[ied] in formulation, strength and quantity." *Id.* at 537. The court found that the "nearly identical" alleged misrepresentations on the label of the supplements sufficed for class standing. *Id.* at 542 (following reasoning of *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (C.D. Cal. 2012), where plaintiff purchased one of eight products at issue). *See also Jovel* at 28-31(class standing found where similar brain health benefits touted on labels of different products); *Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217, 227-29 (E.D.N.Y. 2015) (applying NECA-IBEW and denying 12(b)(1) motion where the unpurchased product had a different name and label, but was allegedly the same as purchased products but in powder form).

 In *Nestle Purina* the court considered a more difficult issue; whether plaintiff had standing to assert claims concerning representations that ***he did not see***, but that were similar to those he did.

 In a thorough decision, Judge Karas cited *NECA-IBEW* and concluded that differences in the advertisements of a line of dog treats that featured bacon did not eliminate subject matter

jurisdiction "particularly when the Second Circuit [in *NECA-IBEW*] did not find variation in risk profiles, interest rates, maturity, and subordination sufficient" to dismiss a securities class action. *Nestle Purina* at 39.

Mr. Hughes has standing to assert claims on behalf of products he did not purchase because the two alleged misrepresentations on the products, "natural" and "Certified Natural", are not just "substantially similar," but identical. Accordingly, with only two representations at issue here, both of which Mr. Hughes relied upon, the Court should find that he has class standing.

**B. The Issue Of Class Standing Should Be Addressed At The Class Certification Stage**

The analysis for class standing significantly overlaps the typicality, commonality and adequacy requirements under Rule 23. *See, e.g., Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 543 (E.D.N.Y. 2017) (finding class standing at class certification stage "for the same reason's [plaintiff's] claim is typical"); *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d. 1155, 1161 (C.D. Cal. 2012) ("The weight of authority views this issue under the lens of typicality or adequacy of representation, rather than standing.") (internal quotations omitted)

As long as Article III standing exists, many courts defer the class standing analysis to the class certification stage. Indeed, the *Buonasera* court, which undertook a class standing analysis at the pleading stage, acknowledged that "[m]any lower courts have construed the Second Circuit's findings in *NECA-IBEW Health and Welfare Fund* and *DiMuro* to indicate that the issue of class standing should not be resolved on a motion to dismiss but rather on a motion for class certification." *Buonasera* at 563 (collecting cases).

Further, at least two courts interpret *NECA-IBEW* as limiting the inquiry at the pleading stage to Article III standing and ***requiring*** the class standing analysis to wait until class certification. In *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061, 2016 U.S. Dist. LEXIS 15171

(S.D.N.Y. Feb. 5, 2016) the court held that the question of whether plaintiffs could represent purchasers of a dietary supplement with "nearly identical" representations "***must***, under *NECA-IBEW*, be addressed at class certification." *Id*. at \*7-8 (emphasis added). Further, in *Frito-Lay,* 2013 U.S. Dist. LEXIS 123824 \*40, the court stated that "*NECA-IBEW* thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

　　While not requiring the deferral, many other courts have taken the same view. *See Manier v. L'Oreal U.S.A., Inc.*, No. 16-cv-6593, 2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2017) (citing *NECA-IBEW* and holding defendant's challenge to class standing appropriately addressed at class certification, not pleading, stage); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 U.S. Dist. LEXIS 136056 \*23 (E.D.N.Y. Sept. 30, 2016) (holding plaintiffs have no burden to establish class standing at pleading stage); *Reid v. GMC Skin Care USA Inc.*, No. 8:15 -cv-277, 2016 U.S. Dist. LEXIS 14001 at \*14 (N.D.N.Y. January 15, 2016) (citing *NECA-IBEW* and *Frito-Lay* and finding that class standing issue premature at pleading stage); *Quinn* at 541 ("Accordingly, such courts routinely deny Rule 12(b)(1) motions to dismiss and, instead, reserve the [class] standing analysis until a motion for class certification."); *Forcellati* at 1161 ("We agree with the numerous recent decisions that have concluded that Defendants' [class standing] argument is better taken under the lens of typicality or adequacy of representation, rather than standing."); *Cardenas* at 992 (question of whether plaintiff could represent purchasers of seven other products solely a Rule 23 question).

### C.    Differences In The Ingredients Do Not Defeat Class Standing

Defendant argues that there are different ingredients in the products.  Def. Br. at 1.  This is true.  They would not be different products if they had the same ingredients and the 12(b)(1) analysis would not be necessary.

Differences in ingredients do not mean that the products are not "sufficiently similar," especially where the representations are the same across products.  *See Buonasera,* 208 F. Supp. 3d at 563 ("Although the unpurchased products may contain different ingredients compared to the purchased products … the Amended Complaint adequately alleges that the misrepresentations claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products."); *Reid* at *5-6 (issue of class standing should await class certification where skin care product contained at least four distinct active ingredients from other product in same line); *Atik* at *4-7, 23 (ingredients varied greatly among products but no showing of class standing necessary at pleading stage); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910, 2012 U.S. Dist. LEXIS 101371 at *13 (N.D. Cal. July 20, 2012) (fact that different ice creams have different ingredients is "not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors").

### D.    *DiMuro* Is Distinguishable

Defendant's class standing argument rests almost entirely on the Second Circuit's decision in *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27 (2d Cir. 2014*)*, which defendant characterizes as "binding" Second Circuit law.  Def. Br. at 1.

On the continuum of fact patterns that courts have examined to determine class standing, *DiMuro* is an outlier.  In a summary order, the Second Circuit noted in *DiMuro* that "each of the seven products have different ingredients, and [defendant] Clinique made different advertising claims for each product.  Entirely unique evidence will, therefore, be required to prove that the

35-some advertising statements for each of the seven different Repairware products are false and misleading." *Id*. at *29.

The *DiMuro* court distinguished these cumbersome facts from the "nearly identical" misrepresentations in *NECA-IBEW. DiMuro* at 29. In this case, there are two advertising statements, not 35. Mr. Hughes' claims are much closer to the "nearly identical" representations in *NECA-IBEW* than the "35-some" in *DiMuro*.

Cases that have similar allegations to those of Mr. Hughes have distinguished *DiMuro* on similar grounds. *See Segovia* at * 8 (distinguishing the numerous different advertising statements in *DiMuro* from the "nearly identical ones" at issue); *Buonasera* at 563 (distinguishing *DiMuro* and *Hart v. BHH, LLC,* No. 15-cv 4804, 2016 U.S. Dist. LEXIS 59943 * 10 (S.D.N.Y. May 5, 2016), and finding products labeled "natural" and "no harsh chemicals" were sufficiently similar to "all-natural," "naturally derived," and "plant based"); *Brady,* 101 F. Supp. 3d at 228 n.5 (distinguishing *DiMuro* on similar grounds); *Nestle Purina* at 38-39 (same).[2]

Accordingly, based on the differences among the "35-some" statements, *DiMuro* is easily distinguishable from this case.

## IV.    PLAINTIFF HAS PLEADED THAT THE PRODUCTS ARE NOT "NATURAL" IN SUFFICIENT DETAIL

Defendant makes two primary arguments why it believes Mr. Hughes has not adequately alleged that the Weleda products are not "natural." First, that plaintiff improperly relies upon the definition of "synthetic" in the Organic Foods Production Act (OFPA), or has otherwise not

---

[2] Where *DiMuro* has been followed it has been where the products were "distinct and serve[d] different purposes." *Hart* at *10 (citing *DiMuro* in support of conclusion that plaintiff lacked class standing).

identified specific federal regulations that state that some of the challenged ingredients are synthetic; and second, that plaintiff has not provided enough detail in his allegations.

As a threshold matter, this case is not about whether the defendant did or did not comply with any particular statute or regulation.  It is about whether a reasonable consumer would find defendant's representations that its products are "natural" or "Certified Natural" to be false or misleading.

Mr. Hughes alleges that the term "natural" means that a product does not contain synthetic ingredients.  His understanding of the term "synthetic" is that it means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance from naturally occurring plant, animal, or mineral sources. Comp.¶ 31.  This understanding comports with the definition in OFPA, but Mr. Hughes' claims do not rely on a violation of the statute itself as a basis for his claims.

Accordingly, like that of the defendant in *Ault v. J.M. Smucker Co.,* No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014), Weleda's discussion of federal regulations at Def. Br. 9-19 largely "misses the mark."  *Ault.* at *18.  In *Ault*, the court rejected the defendant's argument that reasonable consumers could not be misled by a "natural" label because of FDA policy and federal regulations.  *See also Ackerman v. Coca-Cola Co.,* No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *61 (E.D.N.Y. July 21, 2010) (accurate FDA-mandated label on box does not insulate defendant from liability for deceptive marketing); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 940 (9th Cir. 2008) ("Gerber makes no argument as to how compliance with certain FDA regulations would automatically shield it from liability under these California statutes or tort claims.").

It is sufficient for *Iqbal* and *Twombly* purposes that plaintiff has described his

understanding of the term "natural" and alleged which ingredients do not meet this description. Plaintiff offers a description of the chemistry and manufacturing processes for the ingredients at issue in the case, but this is not required at the pleading stage, nor have any courts held that such specificity is required.  *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *40-44 (E.D.N.Y. Sep. 26, 2016) (claim stated where plaintiff alleged "natural" product contained magnesium stearate); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 at *30 (S.D.N.Y. May 7, 2015) ("[I]t is enough that Plaintiffs allege that "natural" communicates the absence of synthetic ingredients."); *Aguiar v. Merisant Co.*, No. 14-00670, 2014 U.S. Dist. LEXIS 165301 at *10 (C.D. Cal. March 24, 2014) (finding that allegations that ingredients isomaltulose and dextrose were "synthetic" as term used in dictionary required "no further factual enhancements" to state claim); *Janney v. General Mills*, No. 12-cv-03919, 2014 U.S. Dist. LEXIS 41452 *9 (N.D. Cal. Mar. 26, 2014) (claim stated where plaintiff alleged "natural" product continued high fructose corn syrup, high maltose corn syrup and maltodextrin); *Jou v. Kimberly-Clark Corp.*, 13-03075 JSC, 2013 U.S. Dist. LEXIS 173216, at *5-8 (N.D. Cal. Dec. 10, 2013) (claim stated where plaintiff alleged "pure & natural" product contained polypropylene and sodium polyacrylate).

Indeed, the question of whether a reasonable consumer would likely be deceived by the terms "natural" or "Certified Natural" is a factual one and cannot be decided on a motion to dismiss.  *See Frito-Lay* at 48 ("What a reasonable consumer would believe the term "natural" to mean on a food label cannot be resolved on this motion [to dismiss]"); *Buonasera* at 566 (whether natural and related misrepresentations are misleading to a reasonable consumer is a question of fact "better suited to the jury."); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("[U]sually [the reasonable consumer] determination

is a question of fact.") (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp.

3d 467, 478 (S.D.N.Y. 2014)); *Segedie* at *30 (S.D.N.Y. May 7, 2015) (same, regarding

"natural" label); *Ackerman* at *67 (denying motion to dismiss); *Vicuna v. Alexia Foods, Inc.*, No.

11-CV-6119, 2012 U.S. Dist. LEXIS 59408 at * 5 (N.D. Cal. Apr. 27, 2012) (meaning of term

"All Natural" to reasonable consumer cannot be decided on motion to dismiss).

     Nonetheless, Plaintiff has gone far beyond the detail needed to state a claim by describing

the technical or legal basis for his allegations that each ingredient is not natural. Comp.¶ 7.

Although the composition and manufacturing processes used to produce the ingredients at issue

will be established during discovery, a brief rebuttal of Weleda's regulatory and chemical

discussion is in order.[3]

### A.    Claims Concerning Benzyl Benzoate, Citral, Citronellol, Farnesol, Geraniol, Limonene, And Linalool

     Weleda claims that benzyl benzoate, citral, citronellol, farnesol, geraniol, limonene, and

linalool are not synthetic because they are "naturally occurring."  Def. Br. at 12-17.  That is true

as an isolated general statement. These ingredients do, in fact, occur in nature.  But plaintiff

alleges that the ingredients used in Weleda's products are the synthetic variants of these

ingredients, not the "naturally occurring" ones (which in general are prohibitively expensive to

distill, in any case). Comp.¶ 7 (f), (g), (j), (k), (l), (m), (o).

     Similarly, Weleda claims that it modifies these listed ingredients with the phrase "from

natural essential oils" on the labels, Def. Br. at 13-17.  But it does not disclose that the

ingredients it uses are actually chemically synthesized.  In any case, it is well settled that on-

product ingredient disclosures do not insulate defendants from liability stemming from otherwise

---

[3] Defendant does not challenge plaintiff's allegations concerning coco glucoside, glycerin, glyceryl stearate, glyceryl stearate SE, glyceryl stearate citrate, stearic acid, xanthan gum or zinc oxide.

misleading affirmative statements. This is because reasonable consumers are not expected to scour a label to ensure that product representations are not false. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013); ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Accordingly, Weleda has sufficient notice of the claims concerning these ingredients under *Iqbal* and *Twombly*.

### B. Claims Concerning Lactic Acid

Like the chemicals described above, lactic acid can be found in nature.  The natural version is not synthetic.  But again, plaintiff has alleged that defendant is using the synthetic version in its products. Comp.¶ 7(a).  The cited regulation, 21 C.F.R. § 184.1061(a), includes a description of the manufacture of the synthetic version ("formation of lactonitrile from acetaldehyde and hydrogen cyanide and subsequent hydrolysis to lactic acid.").  Weleda has more than enough detail here to defend this claim.

### C. Claims Concerning Sodium Bicarbonate

Defendant claims that plaintiff has not stated a claim with respect to sodium bicarbonate because the regulation cited by plaintiff does not use the word "synthetic."  Def. Br. at 19. However, Plaintiff describes the chemically complex manufacturing process that is used to produce sodium bicarbonate and cites to the regulation where that process is set forth, 21 C.F.R. §184.1736. Comp.¶ 7(q).  Accordingly, Weleda cannot plausibly argue it does not have "fair notice" of plaintiff's claim that sodium bicarbonate is not "natural."

### D. Claims Concerning Citric Acid

Weleda claims that citric acid is nonsynthetic because the USDA classifies citric acid which is "produced by microbial fermentation of carbohydrate substances" as such. Def. Br. 10-

11.  However, plaintiff has alleged in more than sufficient detail to support his allegation that citric acid is not natural based on how it is produced and manufactured, since citric acid is "no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*."  *See* Comp.¶ 7 (b).

### E.  Claims Concerning Cetearyl Alcohol

Cetearyl alcohol is a mixture of multiple components, mostly cetyl alcohol and stearyl alcohol.[4]  Defendant points out that cetearyl alcohol is not mentioned in the regulation plaintiff cites, Def. Br. 17.  Plaintiff cites 21 C.F.R. §172.515 which lists cetyl alcohol, one of the main ingredients in cetearyl alcohol, as "synthetic." This is more than sufficient detail to provide Weleda with notice of the claim.

### F.  Claims Concerning Calcium Carbonate

Defendant argues that plaintiff's claims that calcium carbonate is not natural must be dismissed because plaintiff has not cited a federal regulation which says so. Def. Br. 18. However, this case is not about compliance or noncompliance with federal regulations; it is about misleading consumers.  Plaintiff has described the manufacturing process which he believes renders calcium carbonate not "natural." Comp.¶ 7(n).  This is sufficient detail to state a claim.

### G.  Claims Concerning Tocopherol

Plaintiff lists tocopherol as one of the ingredients in the Active Shower Gel product that Mr. Hughes purchased, Comp.¶ 6, and alleges that all of the listed ingredients in the Weleda products are synthetic. Comp.¶ 7.  Those allegations are sufficient to state a claim.  Plaintiff describes why tocopherol (acetate), a variant of tocopherol, is also synthetic. Comp.¶ 7(e).

---

[4] Although addressed by Weleda at Def. Br. at 17, plaintiff has not alleged stearyl alcohol as a stand-alone ingredient in defendant's products.  Plaintiff also concedes that he has not identified a product containing calcium chloride. *See* Def. Br. 17.

Whether defendant's products include tocopherol or the acetate derivative is a matter for discovery.[5]

## V.      PLAINTIFF HAS ADEQUATELY ALLEGED THAT THE "CERTIFIED NATURAL" REPRESENTATION MISLEADS CONSUMERS

Plaintiff has adequately stated a claim that Weleda's "Certified Natural" representation misleads consumers.  *See, e.g.,* Comp.¶¶ 2-3, 6-15.  Defendant does not move to dismiss this allegation and does not mention it other than to briefly describe the *bona fides* of the certifying organization, NATRUE.[6]  Def. Br. 1.   However even if literally true, a representation can mislead consumers.  *See Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 136056 at *30-31 (E.D.N.Y. Sep. 30, 2016) (plaintiff stated claim under GBL § 349 even though representations were not "literally false.").  In this case, Plaintiff has alleged that the "Certified Natural" representation leads consumers to believe Weleda's products do not contain synthetic ingredients.

## VI.      PLAINTIFF HAS STATED CLAIMS FOR BREACHES OF WARRANTIES

### A.  Plaintiff Has Stated A Claim For Breach Of Express Warranty.

Weleda argues that Plaintiff's express warranty claim under New York law must fail because Mr. Hughes is not in privity with Weleda.  Def. Br. at 20.

Under New York state law, privity is not required to assert a claim for breach of express warranty where only economic damages are alleged or where plaintiff challenges public misrepresentations such as labels on products.  *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199

---

[5] Plaintiff did not intend to "impugn" the reputation of tocopherol.  Def. Br. 12, n.6.  Tocopherol is a widely respected and valuable chemical, and sometimes used as an antioxidant.  But, as plaintiff alleges, it is synthetic here.

[6] NATRUE uses four categories to describe ingredients: Natural, Nature derived, Nature identical, and Synthetic. While these categories may not comport with the understanding of a reasonable consumer, taking plaintiff's allegations as true at this stage, none of the challenged ingredients belong in NATRUE's "Natural" category under NATRUE's definition.

(MKB), 2016 U.S. Dist. LEXIS 131564, at *52-54 (E.D.N.Y. Sep. 26, 2016).  Both those circumstances are present here.

First, as acknowledged by the court in *Sitt* and in *Mahoney v. Endo Health Solutions, Inc.,* No. 15-CV-9841, 2016 U.S. Dist. LEXIS 94732 (S.D.N.Y. July 20, 2016), the New York Court of Appeals has long since dispensed with the privity requirement where the plaintiff seeks only economic damages.  *Mahoney* at *16-19 (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16 (1962), *Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 739 (2d Dep't. 2008) and *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 597 (2d Dep't. 2003)).

Here, Mr. Hughes is only seeking economic damages. Comp.¶ 32.

Second, courts have held that where plaintiff challenges a representation made by a defendant on a product label or advertisement, the plaintiff need not be in privity with the defendant.  *See Goldemberg,* 8 F. Supp. 3d at 482 (holding with respect to natural" label, "A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements."); *Brady* at 235 (express warranty claim based on challenge to supplement labels upheld); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015) (breach of warranty claim based on challenges to advertising and product packaging of cold remedy upheld) (citing *Prue v. Fiber Composites, LLC*, No. 11-CV-3304, No. 11-CV-3304, 2012 U.S. Dist. LEXIS 54027 (E.D.N.Y. Apr. 17, 2012)).

Here, plaintiff is challenging representations on the labels of the products. Comp.¶¶ 1-3, 6.

Defendants cite to *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274 (S.D.N.Y. 2014) and *Ebin v. Kandangis Food Inc.*, No. 13 Civ. 2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) for the proposition that privity is required in a breach of express warranty claim.

Def. Br. 20.  But *Koenig* and *Ebin* are outliers on this specific issue and their reasoning is seldom

adopted.  *See Weisblum* at 295 (declining to follow *Koenig* and explaining "courts have held that

a plaintiff need not be in privity with a defendant to bring such a [express warranty] claim based

on misrepresentations contained in public advertising or sales literature").  In addition, in *Ebin,*

the court did not consider any authority concerning the label and advertising issue.  *See also*

*Mahoney* at 19 (declining to follow *Koenig*); *Sitt* at 52 (declining to follow *Koenig* and *Ebin*); *In*

*re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.*, No. MD 16-2695

JB/LF, 2017 U.S. Dist. LEXIS 210549, at *338 (D.N.M. Dec. 21, 2017) (finding "The Court of

Appeals of New York has concluded that privity is not required against a manufacturer or the

advertiser for economic loss." and declining to follow *Koenig* and *Ebin*).

Since privity is not a requirement of plaintiff's express warranty claim, that claim should

not be dismissed.

**B.  Plaintiff's Magnuson-Moss Warranty Act Claim Should Not Be Dismissed**

Defendant argues for dismissal of plaintiff's Magnuson-Moss Warranty Act claim on

three grounds: First, that the representations at issue do not constitute "warranties" under the

MMWA; second, that plaintiff is not in privity with Weleda; and third, plaintiff has not pleaded

the $25 amount in controversy requirement under 15 U.S.C. § 2310(d)(3).  Each of these

arguments fails.

First, defendant claims that the representations on its products do not meet the definition

of a warranty under 15 U.S.C. 2301(6)(A).  This may be true, but an alternative ground is

available.  Although the MMWA provides a federal class action remedy for express and implied

breach of warranty claims, it "merely incorporates and federalizes state-law breach of warranty

claims". *Brady* at 234 (citations and quotations marks omitted). "[C]laims under the Magnuson-

Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, th[e] disposition of [] state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (holding that state law governs implied warranty claims under the MMWA); *see also Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (holding that a breach of express warranty under the MMWA is coextensive with New York State law). *See also Sitt* at 57 (denying motion to dismiss MMWA claim where plaintiff stated an express warranty claim); *Brady* at 235 (same); Def. Br. 22 (arguing "derivative" MMWA must fail).

Under New York law, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Frito-Lay* at 84 (citing N.Y.U.C.C. Law § 2-313(1)(a)). The terms "natural" and "Certified Natural" are such "affirmations of fact." In *Frito-Lay*, the court agreed with the reasoning in *Vicuna v. Alexia Foods, Inc.*, No. 11-CV-6119, 2012 U.S. Dist. LEXIS 59408 at *6 (N.D. Cal. Apr. 27, 2012), which held that an "All Natural" designation was a "statement of fact" about the product and constituted an express warranty. Similarly, in *Ault v J.M Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014), the court held that a representation relative to whether a product is "natural" constitutes "an actionable warranty" and that "a buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements." *Id*. at *20-21. Since plaintiff's representations constitute an express warranty under New York law, they also constitute one under the MMWA.

18

Second, Weleda argues that because of the privity requirement, plaintiff's express warranty claim fails under New York law. However, as discussed in Section VI. A., *supra*, privity is not a required element of Plaintiff's breach of express warranty claim.

Third, Defendant also argues that the MMWA claims must be dismissed because plaintiff has not alleged that the products cost more than $25 as required by 15 U.S.C. § 2310(d)(3). Defendant asserts that this true "even in a putative class action." Def. Br. at 22. However, the Class Action Fairness Act, as pleaded in Mr. Hughes' complaint (AC ¶ 28), provides an independent basis for jurisdiction. "Consistent with every Court of Appeals to address the issue and the vast majority of district courts…where the jurisdictional prerequisites of CAFA are satisfied, [a court] may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015). Accordingly, the $25 requirement is not a barrier to jurisdiction.

Plaintiff's Magnuson-Moss Warranty Act claims should not be dismissed.

### C. Plaintiff Withdraws His Implied Warranty Claims

Plaintiff acknowledges that Weleda has the better of the argument on his implied warranty claims under New York law and withdraws that claim.

## VII.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

There is a split of authority in the Second Circuit on whether a plaintiff in a consumer class action has standing to seek injunctive relief to correct misleading product labels and representations. Some courts reason that since the plaintiff knows about the misrepresentations, he or she is in no danger of being deceived in the future and lacks standing. *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) ("[A]bsent contrary guidance from the Supreme Court or the Second Circuit, precedent requires the Court to

19

conclude that Plaintiff has no standing to seek injunctive relief."); *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277 (BKS/CFH), 2016 U.S. Dist. LEXIS 14001, at *17-18 (N.D.N.Y. Jan. 15, 2016) (collecting cases); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015).

Courts concluding that standing exists generally reason that the inability to rely on the labels in the future constituted a threat of harm, or on the grounds that a contrary holding would mean no one would ever have standing to pursue injunctive relief.  *See In re Amla Litig.*, No. 16-cv-6593, 2017 U.S. Dist. LEXIS 175950, at *40 (S.D.N.Y. Oct. 24, 2017) ("Plaintiffs cannot trust that the advertising on those products is accurate absent specific injunctions ordering defendants not to engage in false or misleading advertising and not to place products on the market without claim substantiation, or, indeed, as long as this harmful product remains on the shelves."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 397-98 (S.D.N.Y. 2016) (following *Belfiore* and finding plaintiffs' statements that they would buy products again if they were properly labeled sufficient for standing); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (Weinstein, J.) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman v. Coca-Cola Co*., No. 09 CV 395, 2013 U.S. Dist. LEXIS 184232, at *56 (E.D.N.Y. July 17, 2013) ([T]o hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

The Second Circuit has not spoken on this issue, but the Ninth Circuit recently has.  Like the Second Circuit, there was a similar ("dramatic") split on the issue in the Ninth Circuit, which the court squarely addressed:

> Today, we resolve this district court split in favor of plaintiffs seeking injunctive relief. We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017).  The court reasoned that "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."[7]

That is exactly the posture in which Mr. Hughes finds himself with respect to Weleda products.  He has alleged:

> If the Products were actually "Certified Natural" and/or "Natural", as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

Comp. ¶ 31; and:

> Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Certified Natural" and/or "Natural".

Comp.  ¶ 48.

Indeed, it was the absence of such an allegation that supported some Second Circuit district courts' findings that Article III standing did not exist.  *See, e.g., Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417-18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not

---

[7] Although *Davidson* was decided under California law, the reasoning applies to this case.  New York's GBL § 349, if anything, is broader in scope than California's Unfair Competition Law.  *See James v. Penguin Grp. (USA) Inc.*, No. 13 Civ. 2801, 2014 U.S. Dist. LEXIS 50769, at *28 (S.D.N.Y. Apr. 11, 2014) ("New York's highest court endorsed a broad reading of the GBL § 349…. It stated that GBL § 349 "on [its] face appl[ies] to virtually all economic activity[] and [its] application has been correspondingly broad.") (quoting *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 712 N.E.2d 662, 665 (N.Y. 1999); *id*. at *17 ("The UCL is a broad statute that prohibits business practices that constitute "unfair competition" which is defined as an unlawful, unfair, or fraudulent act, as well as an act of false advertising.").

allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 U.S. Dist. LEXIS 133484, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"); *Nicosia* at 158 ("Plaintiff does not allege that he intends to purchase the [product] again in the future."); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[Plaintiff] demonstrated that she is, in fact, unlikely to purchase ANR products again."). Accordingly, even under the reasoning of some of the New York district courts on the "no standing" side of the Second Circuit split, Mr. Hughes might have been able to pursue injunctive relief.

Since many New York district courts have found standing, some of the ones which did not may have done so given Mr. Hughes' allegations, and the Ninth Circuit resolved its intra-Circuit split clearly in favor of finding standing, the weight of authority favors Mr. Hughes.

## VIII.   CONCLUSION

For the reasons stated above, Weleda's motion should be denied in its entirety.

Dated: Poughkeepsie, New York

February 28, 2018

Respectfully submitted,

/s/ Adam R. Gonnelli

By: _____

Joseph Lipari, Esq.
Jason P. Sultzer, Esq.
Adam R. Gonnelli, Esq.
The Sultzer Law Group, P.C
85 Civic Center Plaza, Suite 104
Tel: (845) 483-7100
Tax: (888) 749-7747
liparij@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com
gonnellia@thesultzerlawgroup.com

22

**LEEDS BROWN LAW PC**

By: Jeffrey Brown, Esq.
One Old Country Road, Suite 347
Carl Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*